# Reimer's Appeal.

1. The powers vested in the councils of the city of Philadelphia by the Act of April 16th 1838, § 3, Pamph. L. 626, with regard to jut or bay windows, authorize them to make and establish general rules for the regulation of such erections, but do not confer upon them the right to grant by special ordinance permission to construct a bay window in one particular house beyond the building line.

2. A, being the owner of a dwelling-house in the city of Philadelphia, constructed upon the building line, caused a bay or jut window to be

[Reimer's Appeal.]

built in the second story, about sixteen feet above the side-walk, and projecting three feet and six inches beyond the building line. An information being filed by the attorney-general on behalf of the commonwealth to enjoin the maintenance of said window,—*Held*, that the same was an unjustifiable encroachment on the public highway, prejudicial to the interests of the community and the rights of individual property-owners in the neighborhood, and that it was a public nuisance. *Held*, therefore, that an injunction should issue to restrain A. from continuing and maintaining said nuisance, and directing him to remove the same.

March 24th 1882.   Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, and Sterrett, JJ.   Green, J., absent.

Appeal from the Court of Common Pleas No. 1, of *Philadelphia county :* Of January Term 1882, No. 250.

This was an appeal by Augustus Reimer and Caroline A. Reimer from a decree of the said court enjoining the appellants from maintaining a certain bay or jut window and ordering them to remove the same.

Information, in the nature of a bill in equity, filed by the attorney-general of the commonwealth on behalf of the commonwealth against Augustus Reimer and Caroline A. Reimer. The information set forth that Broad street in the City of Philadelphia was laid out of a uniform width of one hundred and thirteen feet between the building lines, and that said street was between Brown and Poplar streets built up on both sides with expensive residences, all of which extended up to the building line only or receded therefrom.

That defendants were the owners of a certain dwelling-house on the east side of said Broad street between Brown and Poplar streets which had been erected many years previously upon the building line, and that defendants had recently caused to be projected from the front wall of said dwelling-house at the second story thereof, a bay or jut window projecting beyond the established building line about three feet and . six inches.

The information further averred that said encroachment upon the highway was a public nuisance, not only infringing the rights of the commonwealth but greatly injuring and depreciating the value of adjacent property by the obstruction of light, air and view necessarily ensuing therefrom.

The information further averred that said encroachment was wholly without authority and in violation of law; and therefore prayed for an injunction to restrain defendants from maintaining said encroachment and that they be ordered and directed to remove the same.

The defendants filed an answer setting out an ordinance of city councils passed September 8th 1881 specially authorizing them to construct the bay window in question, the same to ex-

tend three feet from the building line. The answer averred that said window did project about three feet and that the bottom thereof was at least sixteen feet above the sidewalk. The answer denied that said bay window constituted any impediment to the highway or in any way depreciated the value of the adjacent premises, and also denied that the same was either a private or a public nuisance.

The answer further averred that respondents had attempted to erect the bay window in question before the passage of the ordinance of councils aforesaid, but that an injunction had been issued at the instance of the city to restrain them from so doing, whereupon they had modified their plans to meet the objection of the adjacent property owner, who had instituted said proceeding. The answer further averred that defendants believed the present bill to have been filed at the instance of a property owner on the opposite side of Broad street, that the removal of the window would subject them to great expense and would in no way benefit the public, and that, even if public or private rights were interfered with, there was an adequate remedy at law.

The cause being heard on bill and answer, the court entered a decree in accordance with the prayers of the bill, ALLISON, P. J., delivering the following opinion :—

"This proceeding is instituted by the attorney-general, on behalf of the Commonwealth of Pennslyvania, against the defendants, to restrain an alleged encroachment upon one of the highways of the city of Philadelphia. The information, which is in the form of a bill in equity, sets up that the defendants are the owners of premises 805 North Broad street ; that many years ago a dwelling-house was erected on the lot of ground now owned by defendants, which did not encroach on the highway ; that recently they have caused to be projected from the front wall of said dwelling-house, at the second story; a bay or jut window, which extends beyond the building line over or into the highway about three feet six inches. It is charged that such encroachment is a public nuisance, which not only is an infringement on the rights of the commonwealth, but that it also greatly injures and depreciates the value of adjacent property, by the obstruction of light and air.

" The prayers of the bill are that defendants be perpetually restrained from continuing to maintain said window, and that they be directed to remove the same.

" The averments of the bill are admitted in the answer to be substantially true, but defendants justify that which they have done by citing an ordinance of the councils of Philadelphia, passed the eighth day of September 1881, approved by the mayor, which gives permission to Augustus Reimer to construct or build the bulk or oriel window in question. The

permission is to extend the window three feet from the line of the building, and it is required to be sixteen feet above the sidewalk of the street.

" This raises an issue which involves the invalidity of the ordinance under which the defendants undertake to justify the encroachment of which the commonwealth complains.    The ordinance is of no doubtful meaning ; in express terms it grants permission to Augustus Reimer to construct or build the window in question.   Does this license justify the defendants in what they have done?

" This question has been so recently considered and decided by this court in the case of Commonwealth v. Harris, 10 W. N. C. 10, affirmed on appeal by the Supreme Court, that we might rest content with referring to the opinion of Judge BIDDLE, as containing all that we would be required to say upon the right of councils to grant, by special license, authority to construct bulk or bay windows extending into the highways of the city.

" The power which councils possess over this subject is stated to be derived from the thirtieth section of the act of the 16th of April 1838, which empowers them to make and establish rules and regulations for the better regulation of jut or bay windows.   This power to make rules and regulations which shall confer a general or common right, in which all shall equally participate, does not authorize the granting to one and the withholding from another a permission to construct jut or bay windows according to the caprice or will of councils.

" The judge says, if each case is to be individually passed upon, and does not depend upon its conformity to a general rule, this would be the result, not only in regard to bay windows, but for every other purpose for which it would be desirable to occupy the highway.   This is characterized as special legislation on subjects of general interest and concern, forming no rule or regulation for all alike, but giving invidious privileges to the favored few at the expense of the many, which is contrary to the whole spirit and intent of the authority intrusted to councils by this law.

" I have given this extract from the opinion of the court, that greater emphasis may be placed on the fact, that notwithstanding this clear and forcible statement of the law, and its affirmance by the Supreme Court, councils a short time after the decision of the case of Commonwealth v. Harris, on the 24th of June 1881, passed an ordinance, in which they again impliedly asserted their right to grant special licenses to individuals to erect and maintain bay or oriel windows in the public highway beyond the building line.

" This action of councils was followed by the passage of the

ordinance of September 8th 1881, upon which defendants ground their justification.

"That this last-recited ordinance is without force or virtue of any kind or in any degree, does not admit of question ; it is in direct conflict with the decision of this court, and with that of the highest judicial tribunal in the commonwealth. We therefore put it aside as having no proper standing in the cause and as affording no shadow of justification to the defendants, who are presumed to have known the worthlessness of the license under which they now seek to protect and defend themselves against the commonwealth's charge of having set up an unlawful obstruction in the highway.

"We might be content to rest the decision of the case upon this ground alone, but as making more clear the want of an equitable defense to the case of the commonwealth, it is proper to refer to those portions of the answer by which it is made apparent that this window, as first set up, was without license of authority of any kind to justify it. In March 1881, it was in part or in whole constructed. The city then interposed by injunction to restrain the defendants from maintaining the obstruction which is the subject of the present controversy, and that in order to satisfy the complaint, which was then made against it by a property-holder, the defendants say, ' We did reduce said projection at least two feet, and that the bay window now erected is of said reduced dimensions.' This was some three months before the passage of the general ordinance of June 24th 1881, and at least five months prior to the special license, attempted to be granted by that of September following. The encroachment, as originally created, extended over the footway at least five feet, and, as now constructed, is in excess of the limit prescribed in the ordinance. It is charged in the bill that the window projects over or into the highway three feet six inches, and this is virtually confessed to be so by the evasive statement contained in the answer, that the extension is *about* three feet. There is no need for uncertainty in the answer of the defendants on this point, and every inference must be taken most strongly against them, when precise information is withheld which it is in their power to give.

"If the ordinance of September 8th 1881 granted to the defendants an authority to build this window, which we hold it does not, or sought to ratify that which had been done, the defendants have exceeded the limit prescribed by councils, and in this aspect of the case are to be regarded as wrong doers, and therefore not entitled to the consideration which they claim at the hands of a court of equity.

"The defendants object to relief being granted as prayed for ; first, because, the removal of the window will subject them

to great expense and will in no way benefit the public; and, second, because, whether private or public rights are interfered with, there is an adequate remedy at law for the same.

"We regard the first reason assigned as entitled to no consideration, because the encroachment was begun and practically completed without pretence of right or authority.

"In support of the second ground of objection the defendants cite Angell on Highways § 280, and Attorney-General *v.* New Jersey R. R., 2 Green Ch. 136. The principle stated in Angell is, that injunctions to restrain encroachments on highways are rare, and that they should be granted with great care, to which the reply is that all injunctions should be granted with care; but it does not follow that where public rights are invaded, an injunction will not be granted. In such case no question of the amount of damage is raised, but simply one of the invasion of a right. This is the doctrine announced in the case of the Commonwealth *v.* P. & C. R. R. Company, 12 Harris 159. In the opinion of the court the case is cited of the Attorney-General *v.* The Cohoes Company, 6 Paige 133, where an attempt was made to tap the State canal, which was stopped by injunction without regard to evidence tending to disprove damage; and in Downing *v.* McFadden, 18 Pa. State 334, the keepers of the public works were justified in abating a house that encroached on the embankment of the railroad, though a jury had found that it did no injury.

"The doctrine is rejected that injunctions can apply only to very great injuries, from which it would follow, as LOWRIE, J., remarks, that he who has not much property to be injured, can not have this protection for the little that he has.

"Nor do we regard this as a case in which the doctrine of de minimis invoked by the defendants is applicable. It is an invasion of a common right; it is taking for private use that which belongs to the public; it is a continuing encroachment on or over the highway, and though it is not unusual to prosecute by indictment those who create nuisances by obstructing highways, yet there are cases in which injunctions ought to be granted to prevent the creation or continuance of such nuisances: 5 Vesey 126; 1 Mad. Ch. 159; Eden on Injunctions 11. The injury is also substantial and material, inasmuch as it is calculated to interfere with the right and comfort of individuals, and is not adequately reparable by damages at law. We do not know that we can better express the views we entertain on this subject, than as we have had occasion to state them, in the case of the Attorney General *v.* Lombard & South Street R. R. Co., 1 W. N. C. 491, which we adopt as largely applicable to the case in hand.

"It is not to be denied that the present case differs upon its

facts from those in which injunctions to restrain encroachments on highways have usually been grounded. The encroachment in the case before us does not consist in an obstruction of the ordinary right of passage along or over a street or highway, a highway being defined to be a road given to the public, passing from one public place to another public place. The right of passing along or over a road has connected with it certain incidents which are essential to the proper enjoyment of it, such as light and air and view. If a highway should be covered over, for instance, by the owners of property fronting on either side of it, so as to shut out the light from above, its enjoyment would not only be greatly interfered with, but it might often be rendered dangerous and practically useless. Projecting windows from an upper story interfere to some extent with the ordinary and proper enjoyment of rights which are free to all, and one who appropriates the space above the footway creates a purpresture by making several to himself that which ought to be common to many. It cannot be successfully maintained that owners of property fronting on a highway have any such right as this, and when there is a purpresture set up, and such purpresture constitutes a nuisance as well, by a wrongful appropriation of a portion of a highway, courts of equity may forbid the continuance of such nuisance and abate the same by injunction.

" It is doubtless true that there are cases in which the principal of de minimis may be successfully invoked to prevent the granting of an injunction by the courts of this commonwealth. The fact, however, is not to be forgotten or overlooked that to no small extent this doctrine, as applied in the English courts, and in some of the State courts in our own country, is to be regarded as modified by our own legislation. Our equity jurisdiction is wholly statutory, and rests not on common law principles, except in so far as the legislature have in general terms conferred upon the supreme court and courts of common pleas, the jurisdiction and powers of a court of chancery, in relation to the several matters specifically mentioned in the Act June 16th 1836, and the several acts which follow it on the same subject. One of the powers expressly granted by the Act of 1836 is the prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals, and affording specific relief when a recovery in damages would be an inadequate remedy.

" It will be seen that the power is not only to prevent the commission, but is extended to the continuance of acts which are unlawful, and by which the interests of the community or the rights of the individual citizen are injuriously affected.

[Reimer's Appeal.]

"In this case we hold that the construction of the window is wanting in sufficient legal authority to justify its erection, having, as we have seen, no pretence of right to support it in the first instance, and an invalid ordinance on which to rest afterwards, and that it is even of greater extension than was contemplated by that ordinance. We are also of the opinion that the obstruction is both prejudicial to the interests of the community and the rights of individual property holders in the neighborhood, and that the persons injured would not be adequately compensated by a recovery of damages ; the evil being a continuous one, leading to an endless repetition of suits at law, in which the damages to be recovered would be more than nominal.

"As courts of equity in this State have power to prevent and restrain, not only the commission but the continuance of acts such as we regard this to be, the injunction prayed for is granted."

Respondents thereupon took this appeal, assigning for error the decree of the court.

*John G. Johnson*, for appellants.—The bay window in question was not a public nuisance. It did not obstruct in any way passage along the highway. The provisions of the Acts of February 18th 1769, § 45, 1 Smith's L. 301, and of April 16th 1838, Pamph. L. 626-7, refer only to erections actually obstructing the streets.

The public has merely an easement, a right of passage over the streets, nothing more : Lewis *v.* Jones, 1 Barr 336 ; Woodring *v.* Forks Township, 4 Casey 355 ; Chambers *v.* Furry, 1 Yeates 169. As long as this right of passage is not interfered with, the public has no cause to complain.

The following are the reasons for refusing the injunction :

1st. The right of passage by the public is not interfered with. The use of the highway is by the owner of the soil, and is of such a character as not to interfere with the public right.

2d. The councils of the city, by their vote legalizing the erection, evidence the public judgment that it is not a nuisance.

3d. The erection being complete, the injunction is mandatory in its character, and, amounting to a decree to remove, ought not to be granted before a conviction at law establishes the fact of a nuisance.

4th. There is an adequate remedy at law, by indictment, or by suit for penalty.

5th. The suit is one which has been instituted solely by private persons, who have an adequate remedy at law for the wrong, if any, done them : City of Philadelphia's Appeal, 28 P. F. Smith 39 ; Bay State Brick Co. *v.* Foster, 115 Mass. 431 ; Attorney General *v.* Cambridge G. C. Co., L. R. 4 Ch. App. 71 ; Attorney General *v.* Sheffield Gas Co., 3 De G. M. & G.

335 ; Graves *v.* Shattuck, 35 N. H. 257 ; Ryde Commissioners *v.* Isle of Wight Ferry Co., 30 Beav. 619 ; Morris & Essex R. R. Co. *v.* Prudden, 4 C. E. Green 386, 575 ; Att'y Gen'l *v.* New Jersey R. R. Co., 2 Green's Ch. 137 ; Angell on Highways, § 280.

*Richard C. Dale* (with whom was *Samuel Dickson* and *Henry W. Palmer,* attorney general), for the appellees.—Every unauthorized encroachment upon a public highway or any portion thereof is a common nuisance.   Phil. & Trenton Railroad case, 6 Whart. 25.   It is the duty of the attorney general to institute and carry through all appropriate proceedings to prevent the continuance of the encroachment on the highway.

City councils had no authority to authorize the erection of this bay window by a special ordinance.   The powers vested in councils in this regard by the act of April 16th 1838 were intended to provide a summary method for the better regulations of the highways and the protection of the rights of the public therein, not to invest councils with power to dispose of the highways or appropriate them to private purposes :   Commonwealth *v.* Harris, 10 W. N. C. 10 ; Dillon on Municipal corporations, § 521 ; People *v.* Beaubien, 2 Doug. (Mich.) 273 ; Commonwealth *v.* Blaisdell, 107 Mass. 234 ; Chicago *v.* Rumpff, 45 Ill. 90 ; First Municipality *v.* Blineau, 3 La. Ann. 688.

The courts have power to grant injunctions in cases of public nuisance, even before the existence of the nuisance has been established by the verdict of a jury :   Commonwealth *v.* Rush, 2 Harris 186 ; Att'y Gen'l *v.* Lombard and South Street R. R. Co., 1 W. N. C. 491 ; Commissioners *v.* Long, 1 Parsons 146–7 ; Attorney General *v.* Richards, 2 Anstruther 615 ; Attorney General *v.* Cohoes Co., 6 Paige 133.

Mr. Justice STERRETT delivered the opinion of the court, October 2d 1882.

There is no dispute as to any of the material facts in this case.   The court was clearly right in holding that the bay window in question was constructed and has since been maintained without authority of law ; that it is an unjustifiable encroachment on the public highway, prejudicial to the interests of the community and the rights of individual property owners in the neighborhood, and that it is a public nuisance, the continuance of which courts of equity in this state have power to restrain.

The decree is based upon principles which are so clearly and correctly stated in the opinion of the learned president of the court below, and so well fortified by the reasons given and the

[Richmond Building Asso. *v.* Richmond Building Asso., to use, &c.]

authorities cited therein that we deem it unnecessary to add anything to what he has so well said.

> Decree affirmed, and appeal dismissed at the costs of the appellants.