Walnut & Quince Street Corp., Appellant, *v.*
Mills et al.

Argued January 14, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Walter Biddle Saul,* of *Saul, Ewing, Remick & Saul,* with him *Manus McHugh, Earl G. Harrison* and *Maurice Bower Saul,* for appellant.—There can be no question but that the state, and by delegation the municipality, has the power of control over encroachments into or over public highways and the highway covers the space from house line to house line: Reimer's App., 100 Pa. 182; Lenon v. Porter, 65 Pa. Superior Ct. 94.

That portion of subsection (e), section 11, article II, of the Act of 1919, purporting to confer upon the art jury the right of approval of all structures to be erected over highways is invalid and unconstitutional: Buttfield v. Stranahan, 192 U. S. 470; Union Bridge Co. v. United States, 204 U. S. 364; Yick Wo v. Hopkins, 118 U. S. 356; Ploner v. Oil Co., 284 Fed. 34; Seattle Trust Co. v. Roberge, 278 U. S. 116; Douglas v. Noble, 261 U. S. 165.

The municipality does not own the highways as a proprietor, and its rights therein are not proprietary rights. The Commonwealth, and through the Commonwealth the municipality, controls the highways as a sovereign, in trust however for all the people: Phila. v. Teller, 50 Pa. Superior Ct. 260; Com. v. Kembel, 30 Pa. Superior Ct. 199; Kopf v. Utter, 101 Pa. 27; Reimer's App., 100 Pa. 182; Livingston v. Wolf, 136 Pa. 519; Seibert v. Sebring, 55 Pa. Superior Ct. 475.

The art jury is a "special commission" exercising control over municipal property, and performing a municipal function and as such is prohibited by article III, section 20, of the state Constitution: Perkins v. Phila., 156 Pa. 554; Porter v. Shields, 200 Pa. 241; Moll v. Morrow, 253 Pa. 442; White's App., 287 Pa. 259.

The language of section 11 (e), article II, Act of 1919, P. L. 581, under discussion, is so indefinite and uncertain that the legislative intent cannot be properly determined, and the section must accordingly be held

inoperative and void: Miller v. Packing & Rubber Co., 268 Pa. 51; United States v. Grocery Store, 255 Pa. 81; Connally v. Construction Co., 269 U. S. 385.

Even though the power of the art jury be assumed, the bill of the city must be dismissed, because the art jury exercised its power unreasonably and unfairly so as to operate as an unjust discrimination against the Walnut & Quince Streets Corporation.

*Augustus Trask Ashton,* City Solicitor, with him *T. B. K. Ringe* and *G. Coe Farrier,* Assistant City Solicitors, for appellees.—Any argument that the City of Philadelphia, or its duly constituted authorities, acted in a discriminatory manner in objecting to the erection and maintenance of the marquise in question is wholly without foundation: Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355.

Section 11 of article II of the City Charter Act of 1919, P. L. 581, establishing an art jury for cities of the first class is constitutional.

The Commonwealth of Pennsylvania has delegated this authority to regulate the use of public property for private purposes to the City of Philadelphia, acting with respect to æsthetic considerations through the art jury: Reimer's App., 100 Pa. 182.

The State has the power to regulate æsthetics in public property.

Art jury provisions do not violate the state Constitution: Com. v. Moir, 199 Pa. 534.

OPINION BY MR. CHIEF JUSTICE FRAZER, February 2, 1931:

This appeal is from a final order dismissing exceptions to the chancellor's adjudication in a proceeding in equity filed by a theater owner seeking to restrain municipal authorities of the City of Philadelphia from interference with the erection and construction of an electrical sign and a marquise in front of a theater building and

extending over the sidewalk. The Walnut & Quince Streets Corporation filed the bill as owner of the new Forrest Theater located on Walnut Street between 11th and 12th Streets at Quince Street in defendant city; it was directed against William B. Mills, superintendent of the department of public safety, the eight members of the Philadelphia Art Jury, and the mayor, an ex-officio member; and, by subsequent agreement of counsel, the municipality was later joined as a party defendant. Upon presentation of the bill and supporting affidavits, the chancellor granted a preliminary injunction, fixed the security to be entered and appointed a time for a preliminary hearing. Under this preliminary order plaintiff was allowed to use and light the part of the marquise already erected but not to finish or paint it. Later, and after the city had presented points for affirmative relief, the chancellor, by an amended order, restrained the city's police department from interfering with the completion, finishing and painting of the marquise, without prejudice, however, to the rights of the city or any parties to the bill. In the amended order, the electric sign was directed to be moved and set back so that it would not project beyond the main building line more than four feet three inches. This was done, consequently the sign is no longer part of the subject-matter in this proceeding and our attention will be confined to the issues affecting the marquise.

The present controversy arises because the theater owner erected the marquise, a permanent structure, made of heavy building materials, extending about half a city block along the front of the theater and completely overhanging the sidewalk, without having complied with the legal requirement that plans for such a structure must be approved by the Philadelphia Art Jury before erection is permitted.

Plans for the erection of this canopy were approved by the city department of building inspection, a permit for its construction was duly issued by the department

of public safety, and in addition a permit was issued by the department of highways, subject to the approval of the art jury of Philadelphia and requiring petitioner to secure that approval before it could lawfully erect the structure. On April 27, 1928, after the theater owner had partially completed the marquise, it submitted plans for its construction for the art jury's approval. Upon consideration, the art jury refused to approve these plans, and so notified plaintiff. The city solicitor thereupon demanded discontinuance of further work on the extension to the building and removal of such parts as had already been erected, and the superintendent of police warned plaintiff that an attempt made to illuminate the canopy would be followed by the arrest of those responsible. Subsequently, the theater corporation submitted an amended plan for the overhanging extension, which the art jury also refused to approve, returning this second submission with suggested modifications and changes. In disposing of complainant's exceptions to the adjudication and of the city's prayer for affirmative relief, the court in banc dismissed the bill and entered a decree permanently enjoining plaintiff corporation from maintaining the present marquise and ordering its removal unless, within 15 days after entry of the order, the owner submit and the art jury approve a modified plan. The theater corporation, however, did not submit further plans or designs in accordance with these suggestions of the art jury, but took this appeal.

The theater owner admittedly violated the Act of Assembly of June 25, 1919, P. L. 581, known as the Charter Act which, by article II, section 11, pages 585-6, provides for a board or commission to be known as the art jury, setting forth the qualifications which its several members must possess, together with the function and purpose of the jury in passing upon works of art and erections upon, or extending over, public places. Subsection "e," (page 586) of the cited article and sec-

tion provides, in part, that "the approval of the jury shall also be required in respect to all structures or fixtures belonging to any person or corporation which shall be erected upon, or extend over, any highway, stream, lake, square, park or other public place within the city, except as provided in this act...... Nothing requiring the approval of the jury shall be erected or changed in design or location without its approval." The ordinance of December 31, 1919, section 16, page 554, by which the city council exercised the rights given it under the act, has also admittedly been violated by appellant. Plaintiff attempts to justify these violations by contending that the legislation conferring upon the art jury the right of approval or disapproval over structures to be erected above highways is unconstitutional (a) because the legislature, having laid down no definite standard or rule governing the exercise of the jury's discretion, permits it to act arbitrarily and in violation of the due process clauses of the state and federal Constitutions, (b) because the art jury is a "special commission" exercising control over municipal property and performing a municipal function in violation of article III, section 20, of the state Constitution, forbidding the creation of such bodies, and (c) because the power to regulate the type of marquise is a power to regulate æsthetics, which power the legislature does not possess and therefore could not delegate to the art jury. Furthermore, appellant complains that if the power of the art jury be assumed, it has acted unreasonably and unfairly so as unjustly to discriminate against appellant.

It is a settled principle that the legislature has the power of control over encroachments into or over public highways, from house line to house line, and this control may be delegated to municipalities in the State: Reimer's App., 100 Pa. 182, 185; Lenon v. Porter, 65 Pa. Superior Ct. 94, 98. As we stated in Reimer's App., supra, the councils of Philadelphia derive power to make rules and regulations in this regard from the Act

of April 16, 1838, section 3, P. L. 626. The City Charter Act also grants such power, and, with the Ordinance of 1919, makes the approval of the art jury a prerequisite in respect to all structures or fixtures extending over the public highways. This function of the art jury affects only what an abutting owner may seek to place over or in the highways; it does not concern the use by individuals of their own private property: Nierenberg v. Maxwell Co., 76 Pa. Superior Ct. 295, 297. The art jury has been designated by the legislature to act, in the respects named, in guarding the streets, of which the municipality is trustee for the public, from unfitting and objectionable encroachments. The importance of this supervision is well illustrated by the present case where the encroachment is wholly unreasonable and in patent disregard of public rights.

Taking up appellant's constitutional objections to the art jury, we are not impressed with the argument that, though the jury is empowered to use its discretion in the granting or withholding of permits to private individuals to erect structures encroaching on or over public streets, the omission by the legislature of definite standards or rules by which the fairness of the jury's exercise of discretion can be tested, vitiates the act. In all instances in which the municipality, or any coördinate branch of government acting for it, is given discretionary power of control and supervision over public property, the exercise of this discretion in determining what is fit and what is unfit, what is permissible and what should not be permitted to private persons, who seek, as a matter of grace, to place permanent structures in the public highways for their private accommodation, is an exercise of judgment which necessarily depends upon the circumstances of each case. As appellee points out, "Private property and vested interests in private individuals are naturally in a class separate and distinct from property which is public in nature, and are particularly separate and dis-

tinct from a privilege in public property granted by the grace of the trustee thereof." Since appellant has no vested interest in the use of public streets, the cases supporting its contention have no application here.

Appellant contends that the art jury is a "special commission" in violation of section 20 of article III of the Constitution of Pennsylvania, which provides that "the General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

As said in Moll v. Morrow, 253 Pa. 442, 444, "There is no question that the legislature can establish almost any form of government it pleases and that it may subdivide municipal functions, create departments, bureaus and other agencies and change them." The Charter Act of 1919 established the art jury as a distinct element of the governmental structure. Although the act changed in part what had theretofore been the scope of certain municipal departments, it did not create a special commission in the sense of creating a body separate and distinct from the subdivisions of the municipal government, empowered to "supervise or interfere with any municipal improvement," but merely directed that, before designated structural encroachments should be permitted on the highways, approval of their design should be secured from this body of experts particularly fitted for passing judgment in matters of æsthetics. The analogy appellant seeks to have us draw between the case at bar and that (Moll v. Morrow, supra) in which we declared the act creating a bureau of public morals for cities of the second class unconstitutional, is untenable. There is no "special or unusual power" given to the art jury so as to violate the power of control in the premises vested in the municipality. The morals bureau we held to be "alien" to the form of gov-

ernment established for second-class cities "in every characteristic." That is not true of the art jury. Its function of approving or disapproving plans for encroachments on public highways does not alienate or transcend the ultimate power of control vested in the municipality. The fact that its work is in aid of goverment does not violate the terms or spirit of section 20, article III, of the state Constitution.

Appellant's point that the power to regulate the type of marquise, being a power to regulate æsthetics not possessed by the legislature itself, could not be delegated to the art jury, is not well taken, for the State, and by delegation the municipality, have been for many years universally recognized as having power to regulate æsthetics in public property. The police power is available for the suppression of a nuisance whether offending to hearing, smell or sight. As said in State ex rel. Civello v. City of New Orleans, 154 La. 271, 273: "An eye-sore in a neighborhood......might be as much a public nuisance and as ruinous to property values in the neighborhood generally as a disagreeable noise or odor, or a menace to safety or health. The difference is not in principle, but only in degree." It is true that recognition of the power to regulate æsthetics by the state and municipal authorities is of comparatively recent mention in the law books in this country, but it would be an unwarranted repudiation of much that has been accomplished toward the beautification of our towns and cities by state and municipal effort, exercised principally, and rightfully, under the police power, to hold, at this date, that our fundamental law does not permit state and municipal control over æsthetic considerations in the regulation of public property. The function of the art jury which we are considering entirely pertains to public property, and to the extent that vested property rights are not affected by its exercise of supervisory power, the police power need not be involved. In the present case, the action of the art

jury in no way affected appellant's private property rights. As said by McQuillin on Municipal Corporations (2d ed.), volume 4, section 1415, page 65, "Whatever rights or title the city or town may have over its streets, its powers are those of a trustee for the benefit of a cestui que trust (the public) to be liberally construed for its benefit, strictly construed to its detriment." We recognize the importance of æsthetic considerations in what private persons may, at the city's pleasure, be allowed to place in her streets. No one would contend that our organic law forbade municipalities to choose the variety or species of trees and plants they may place in their parks. The art jury's function in choosing what may or may not encroach on the streets is likewise in keeping with governmental guardianship of public property for the public welfare.

The language of the act creating the art jury is as definite and certain as is reasonably possible in view of the nature of the latter's duties and purposes. The act clearly defines the jury, carefully selects the class of experts who shall compose the body, describes their functions, and empowers them to make necessary rules and elect officers. We agree with appellee that for the legislature to have attempted to enumerate, classify and make rules touching what the art jury should and what it should not consider in determining the merit of art objects and encroachments on the public highways would have had the effect of rendering the enactment of little or no value.

We are not impressed with the contention that the art jury exerted its powers unreasonably and unfairly so as to work an unjust discrimination against appellant. From exhibits in the record we see that the structure appellant calls a "marquise" is not in fact a marquise but, as above said, is an overhanging construction of heavy building materials, extending the full length of the theater front on Walnut Street (above half a block), and not only overhangs the entrance and

exits but continues along the front of the building so as to overhang what appears to be a store for rent on the ground floor of the theater. It reaches to the curb line and in fact arcades the sidewalk. It is ornamented on all three sides with elaborate electrical equipment which would undoubtedly "over-illuminate the highway in a garish and glaringly offensive manner, so as to shine into windows of offices and adjoining buildings and make a most undesirable element of disturbance and untasteful over-decoration." Though we note appellant's statement that the "marquise" was erected for the legitimate purpose of protecting the public from inclemencies of the weather upon entering and leaving the theater, appellees' contention that this structure was designed principally for the advertising purposes for which it is so largely used seems reasonable, for no doubt a much less elaborate form would serve the purpose of protection from inclement weather. We pass the point that appellant was discriminated against in that the authorities have not compelled removal of other objectionable marquises in defendant city, in view of the uncontradicted testimony of the assistant city solicitor that department orders have been issued and court proceedings are pending against many other property owners who have violated the law in a similar manner.

Appellant's objections to the art jury's methods of arriving at its decision are of little weight. The president of the jury testified that the board disapproved petitioner's marquise because its committee reported adversely upon it. We recognize the necessity of a body such as the art jury arriving at its decisions by the careful and expert methods which it alone should prescribe, and, since the record of the inquiries in the present case shows they were conducted by investigation of a committee followed by what appears to be intelligent confirmation by a quorum of the jury of the committee's report, it is not our place to criticize their

method of procedure. We are not impressed by appellant's extended argument that the action of the jury was unreasonable simply because the mental deliberations of its members could not be reduced to categoric statements by their president when he was examined in court. We find nothing in the record warranting a change in the order made by the court below.

The order is affirmed at cost of appellant.